**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**FOLEY SQUARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:22-CR-00398 (GHW) |
| Plaintiff, | |
| vs. | COURT: Hon. Gregory H. Woods |
| ABBAS SAEEDI, | |
| Defendant. | |

## BRIEF IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE

Mr. Saeedi humbly requests this court grant compassionate release so he may care for his elderly and ailing parents, his ailing wife, and his minor children, all of whom require his assistance with activities of daily living. His parents suffer from a host of medical problems, leading to their limited mobility and self-care. Mr. Saeedi is the available caretaker for his parents and his minor children who live at home.

WHEREFORE, Abbas Saeedi respectfully requests that for the reasons set forth in this Brief in Support and any other reasons that may be deemed appropriate and just, the Court grant the requested reduction in sentence and convert his prison term to supervised release subject to home confinement and electronic monitoring, as the Court deems warranted.

Respectfully submitted,

/s/Brandon Sample
Brandon Sample
Brandon Sample PLC
1701 Pennsylvania Ave. N.W. # 200
Washington, DC 20006
Tel: 202-990-2500
E-mail: brandon@brandonsample.com

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................. 3

I. PERTINENT BACKGROUND AND PROCEDURAL HISTORY ......................................... 5

II. LEGAL AUTHORITY GOVERNING COMPASSIONATE RELEASE................................ 6

III. EXTRAORDINARY AND COMPELLING REASONS WARRANTING RELIEF.............. 8

A. Janya Saeedi: Mr. Saeedi's Disabled Wife ............................................................... 8

B. Mahboob Saeedi: Mr. Saeedi's Disabled 79-Year-Old Father .................................. 9

C. Shanaz Saeedi: Mr. Saeedi's Disabled 75-Year-Old Mother................................... 11

D. Courts Have Found Compassionate Release Proper to Care for an Ailing Partner…….......... 12

E. Courts Have Found Compassionate Release Proper to Care for Ailing Parents .................... 13

F. Courts Have Found Compassionate Release Proper to Care for Minor Children .................. 13

IV.  SECTION 3553 FACTORS: A SENTENCE SUFFICIENT, BUT NOT GREATER THAN
NECESSARY, TO COMPLY WITH THE PURPOSES OF SENTENCING............................ 14

A. Nature and Circumstances of the Offense.................................................................. 14

B. History and Characteristics of the Defendant ........................................................... 15

C. The Need for the Sentence Imposed .......................................................................... 15

D. The Kinds of Sentences Available and the Established Sentencing Ranges ............................ 17

E. Any Pertinent Policy Statements................................................................................ 17

F. Granting Compassionate Release Will Not Result in Unwarranted Disparity ......................... 18

G. The Need to Provide Restitution to Any Victims of the Offense ............................................ 18

CONCLUSION..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Pepper v. United States*,
   562 U.S. 476 (2011) ............................................................................ 16

*United States v. Francisco-Ovalle, No. 18-cr-526*
   2022 U.S. Dist. LEXIS 67588 (S.D.N.Y. Apr. 12, 2022) ................................ 14-15

*United States v. Hasanoff, No. 10-CR-162*
   2020 U.S. Dist. LEXIS 199816 (S.D.N.Y. Oct. 27, 2020) ............................... 15-16

*United States v. Hogenkamp*,
   979 F.3d 1167 (7th Cir. 2020) .............................................................. 19

*United States v. Martinez*,
   2020 U.S. Dist. LEXIS 167652 (S.D.N.Y. Sep. 13, 2020) .................................. 14

*United States v. Muhammad Khalid Khan, No. 18-cr-830*
   2023 U.S. Dist. LEXIS 63793 (S.D.N.Y. Apr. 11, 2023) .................................. 13

*United States v. Patrick, No. 3:12cr141*
   2022 U.S. Dist. LEXIS 126469 (D. Conn. July 18, 2022) ......................... 14, 15-16

*United States v. Saccocia, No. 20-2045,*
   2021 U.S. App. LEXIS 246879 (1st Cir. Aug 18, 2021) ..................................... 8

*United States v. Sosunov*,
   2020 U.S. Dist. LEXIS 175765 (S.D.N.Y. Sep. 24, 2020) .................................. 14

**Statutes**

18 U.S.C. § 371 ........................................................................................................ 6

18 U.S.C. § 3553 ............................................................................................... *passim*

18 U.S.C. § 3582 ................................................................................................. 1, 8

FSA § 603 ............................................................................................................... 1

**Other**

U.S.S.G. § 1B1.13 ............................................................................................ *passim*

U.S.S.G. § 2B1.4 .................................................................................................... 6

U.S.S.G. § 4C1.1 .................................................................................................... 6

# I.        PERTINENT BACKGROUND AND PROCEDURAL HISTORY

Abbas Saeedi was charged as a co-conspirator in a multi-count fraud indictment. (ECF No. 1). He pleaded guilty to one count of Conspiracy to Commit Securities Fraud and Wire Fraud in violation of 18 U.S.C. § 371 (Count 8) on September 7, 2023. Subsequently, Mr. Saeedi engaged in proffer sessions with the Government starting around October 2022. Initially, his reluctance to fully disclose his criminal activities led to the termination of the first session. However, his increased transparency in later sessions provided valuable insights into the insider trading ring's operations, although this did not result in a cooperation agreement with the Government due to their assessment of his assistance potential. (ECF No. 124 at 1-3).

The plea agreement set forth the sentencing guidelines based on U.S.S.G. § 2B1.4, considering the financial gain from the offense and Mr. Saeedi's obstruction of justice, balanced by a reduction for accepting responsibility. This resulted in a stipulated offense level of 21 and, with no criminal history, a guideline range of 37 to 46 months' imprisonment. However, amendments to the Sentencing Guidelines, particularly Section 4C1.1 in November 2023, allowed for a reduction in offense level due to Mr. Saeedi's lack of criminal history, setting the guideline range at 30 to 37 months. Both the Probation Office and the Government recommended a sentence below this range.

In preparation for sentencing, a probation officer compiled and submitted a Presentence Report (PSR) to the Court and all relevant parties. (ECF No. 112). No objections were filed. At the sentencing hearing on January 3, 2024, the Court concurred with the recommendation for a sentence below the guideline range, imposing a custodial sentence of five months and two years of supervised release, with the initial seven months under active GPS monitoring. Additionally,

the Court mandated a $100.00 assessment fee, a $75,000.00 fine, forfeiture of $691,104.73, and joint and several restitution. (ECF No. 130 at 2-3, 6-7).

Mr. Saeedi is currently at home and has been ordered to self-surrender to the BOP on April 19, 2024, at noon. (ECF No. 130 at 2). His projected release from BOP custody is five months from the date he self-surrenders, excluding any prior custody credit, since he does not earn good conduct time since his sentence is less than 366 days.

No appeal was filed, and there are no pending motions for relief in this case.

## II.     LEGAL AUTHORITY GOVERNING COMPASSIONATE RELEASE

The First Step Act ("FSA") removed a significant obstacle from judicial review of sentences by permitting courts to consider defendant-filed motions for compassionate release and determine whether "extraordinary and compelling reasons" exist that make sentence reductions "sufficient, but not greater than necessary," under 18 U.S.C. § 3553(a). First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

Under the FSA, this Court is afforded jurisdiction to make the § 3553(a) determination of whether Saeedi's time in prison is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. Likewise, this Court may determine if caring for his disabled mother, father, wife, and two minor children is an "extraordinary and compelling reason" warranting a reduction in sentence to immediate release to home confinement.

After the FSA's passage, the Court may grant a reduction in sentence if it finds "the defendant has presented an 'extraordinary and compelling reason' warranting a sentence reduction, 18 U.S.C. § 3582(c)(1)(A)(i), and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Saccocia*, No. 20-2045, 2021 U.S. App. LEXIS 246879, at *5 (1st Cir. Aug 18, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). This

court also must consider the applicable § 3553(a) factors to "determine whether, in its discretion, the reduction is warranted in whole or in part under the particular circumstances of the case." *Id.* (quotations omitted).

U.S.S.G. § 1B1.13 defines "extraordinary and compelling reasons" as:

> (b) **Extraordinary and Compelling Reasons.** – Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> …
>
> (3) **Family Circumstances of the Defendant. –**
>
> …
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "**immediate family member**" refers to any individual listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.
>
> …
>
> (5) **Other Reasons.** – The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13 (2023)

While the Sentencing Commission Policy Statement on the reduction of sentences lists categories of "extraordinary and compelling reasons," there is no restrictive list or combination of factors that prohibits release. *See* U.S.S.G. § 1B1.13(b)(1)-(6). Moreover, the reasons for seeking a reduction in sentence "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13(e).

Accordingly, this Court has the authority to consider whether Saeedi's father's, mother's, and wife's medical conditions and the need to care for his two minor children, combined with the other relevant circumstances presented here, constitute an extraordinary and compelling basis for a sentence reduction.

## III. EXTRAORDINARY AND COMPELLING REASONS WARRANTING RELIEF

Mr. Saeedi's immediate family relies on him to fulfill their daily needs. While his wife, father, mother, and two minor children live in the same household, he is the only medically abled adult. As such, his responsibilities include driving, grocery shopping, transporting family members to medical appointments, and filling prescription medications. Without his direct involvement, his family would be unable to accomplish many necessities of daily life.

### A. Janya Saeedi: Mr. Saeedi's Disabled Wife

Mr. Saeedi's wife, Janya Saeedi, is 55 and the other primary caregiver for their two minor daughters. (ECF No. 112, PSR at ¶¶ 92, 94). At the time of the Pre-Sentence Report interview, Janya was "hospitalized for over one week with a blood infection, pneumonia, and respiratory issues." (Id. at ¶ 92). She has required hospitalization "multiple times [in 2023] for serious infections." (PSR at ¶¶ 92, 94). During a telephone interview with U.S. Probation from her hospital bed, Janya advised that "her health has been poor, and she struggles with comprehension of English." (Id. at ¶ 93).

A sampling of more recent emergency room admissions include:

- November 12, 2023 (one-day admission resulting from complications from infection)
- September 12-19, 2023 (eight-day admission resulting from abdominal pain)

In addition to the above emergency room and hospital admissions, Janya also suffers and has recently suffered from the following medical conditions:

- Abdominal Pain
- Acute Renal Failure
- Anemia
- Cholelithiasis (i.e., Gallstones)
- Community-Acquired Pneumonia
- Diabetes Mellitus with Hyperglycemia
- Fatty Liver Disease
- Gastroesophageal Reflux Disease (GERD)
- Gram-Negative Bacteremia Causing Septicemia
- History of Acute Kidney Injury Due to Nephrocalcinosis
- Hypocitraturia Due to Kidney and Bladder Stones
- Medullary Sponge Kidney
- Severe Sepsis with Acute Organ Dysfunction
- Urinary Tract Infections

In summary, Janya is consistently in poor health, periodically requires hospitalization due to a recurring series of blood infections, and relies on Mr. Saeedi to care for her. More acutely, each time the recurrent blood infection returns, she is completely incapacitated, requires emergency room admission, and is unable to care for either their two minor children or Mr. Saeedi's parents.

### B.    *Mahboob Saeedi: Mr. Saeedi's Disabled 79-Year-Old Father*

Mr. Saeedi's father, Mahboob Saeedi, is 79 years old, actively battling cancer, and suffers from both spinal problems and other age-related health conditions. Mr. Saeedi's parents completely depend upon him financially and for transportation. For example, Mahboob cannot drive and requires Mr. Saeedi to take him weekly to hospital appointments.

Mahboob's medical records reflect him suffering from numerous age- and non-age-related medical conditions, including:

- Bladder Cancer

- Malignant Carcinoid Tumor (Stomach)
- Transitional Cell Carcinoma (Left Kidney)
- Urinary Organ Cancer
- Coronary Artery Bypass Graft History
- Diabetes Mellitus with Hyperglycemia
- Gastrointestinal Hemorrhage
- Hypertension
- Coronary Artery Disease
- Abnormal Cardiovascular Stress Test
- Abnormal Weight Loss
- Angina Pectoris
- Atherosclerosis of Aorta
- Bilateral Knee Joint Pain
- Bilateral Nonexudative Age-Related Macular Degeneration
- Bilateral Sensorineural Hearing Loss
- Body Fluid Retention
- Chronic Lower Back Pain
- Degenerative Disk Disease
- History of Radical Nephrectomy
- Iron Deficiency Anemia
- PPD Positive (i.e., Tuberculosis)
- Right Inguinal Hernia
- Right Trigger Finger Injury
- Scoliosis
- Solitary Pulmonary Nodule[1]

In addition to the above conditions, Mahboob has an extensive surgical history, including:

- Extraction of Cataract (2004)
- Replacement Shoulder Partial (2009)
- Bypass Graft, Internal Mammary Coronary Artery (2014)
- Coronary Artery Bypass Graft with Endoscopic Vein Harvest (2014)
- Colonoscopy and Biopsy of Bladder (2018)
- Esophagogastroduodenoscopy (2018) (two instances in 2018)
- Evacuation of Clot, Bladder (2021)

---

[1] Office Visit in Medicine Station 201, KAISER PERMANENTE (Feb. 20, 2024); Telephone Appointment Visit in Physical Medicine, KAISER PERMANENTE (Sept. 1, 2023); Office Visit in Orthopedic Surgery, KAISER PERMANENTE (Jul. 24, 2023); Office Visit in Surgery Department, KAISER PERMANENTE (Jul. 24, 2023); Office Visit in Medicine Station 201, KAISER PERMANENTE (Jul. 10, 2023); Telephone in Adult Primary Care, KAISER PERMANENTE (Jun. 26, 2023); Assist in Adult Primary Care, KAISER PERMANENTE (May 31, 2023); Scheduled Telephone Encounter in Special Needs Program, KAISER PERMANENTE (Apr. 26, 2023); Office Visit in Audiology, KAISER PERMANENTE (Mar. 31, 2023); Office Visit in Medicine Station 201, KAISER PERMANENTE (Jan. 13, 2023); Office Visit in Medicine Station 201, KAISER PERMANENTE (Sept. 30, 2021).

- Laparoscopic Nephroureterectomy (2021)
- Replacement Stent Ureteral (2021)
- Ureteroscopy with Biopsy (2021)
- Cystoscopy with Biopsy of Bladder (2022)
- Prostate Incision, Transurethral (2022)
- Retrograde Pyelogram (2022)[2]

Cumulatively, and in conjunction with his age- and mobility-related conditions, Mahboob's health status results in him being unable to carry on activities of daily living. As with his wife, he is entirely dependent on his son, Mr. Saeedi, for their welfare, mobility, access to health care, and other necessities.

### C.      *Shanaz Saeedi: Mr. Saeedi's Disabled 75-Year-Old Mother*

Mr. Saeedi's mother, Shanaz Saeedi, is 75 years old, diabetic, and has both back and leg ailments.[3] She cannot drive and requires Mr. Saeedi to take her to the hospital regularly for appointments.

As reflected in Shanaz's medical records, she suffers from numerous age- and non-age-related medical conditions, including:

- Atherosclerosis of the Aorta
- Atrial Fibrillation
- Coronary Artery Disease
- Diabetes Mellitus with Chronic Kidney Disease
- Hypertension
- Hypertension
- Lumbar Radiculopathy
- Nonproliferative Diabetic Retinopathy (NPDR)
- Peripheral Artery Disease
- Peripheral Atherosclerosis[4]

---

[2] Office Visit in Surgery Department, KAISER PERMANENTE (Jul. 24, 2023).
[3] Pre-Sentence Report at ¶ 86, United States v. Abbas Saeedi, Case No. 1:22-cr-00398-GHW (Nov. 29, 2023).
[4] Patient Demographics, KAISER PERMANENTE (Feb. 27, 2024); Lab in Laboratory Hospital Information, KAISER PERMANENTE (Feb. 21, 2024); Office Visit in Obstetrics & Gynecology, KAISER PERMANENTE (Jan. 10, 2024); Office Visit in Orthopedic Surgery, KAISER PERMANENTE (Aug. 18, 2023); Emergency Department Hospital Information, KAISER PERMANENTE (Jul. 30, 2023); Office Visit in Medicine Station 201, KAISER PERMANENTE (May 3, 2022).

Critically, as reflected in her medical records, she requires assistance moving safely around the house, shopping and obtaining food, and all transportation needs (including medical appointments and prescription medications).[5] These records reflect that she relies on her son, Mr. Saeedi, to fulfill these needs.[6]

Cumulatively, and in conjunction with her age- and mobility-related conditions, her health status results in Shanaz being unable to carry on activities of daily living. As with her husband, she depends entirely on Mr. Saeedi for their welfare, mobility, health care access, and other necessities.

**D.**      ***Courts Have Found Compassionate Release Proper to Care for an Ailing Partner***

The need to care for an ailing partner amounts to an "extraordinary and compelling reason" for compassionate release. In *United States v. Muhammad Khalid Khan*, No. 18-cr-830 (VSB), 2023 U.S. Dist. LEXIS 63793 (S.D.N.Y. Apr. 11, 2023), this Court found that the need to care for not only the defendant's ailing wife but also his ailing parents was sufficient to grant compassionate release. *Id.* at *9 ("although Khan does not satisfy the Sentencing Guidelines' requirements for compassionate release as a sole caregiver, I will consider his need to care for his wife and children, his ailing mother, and his mentally ill brothers") (internal citations omitted); *See also United States v. Sosunov*, 2020 U.S. Dist. LEXIS 175765, at *5-6 (S.D.N.Y. Sep. 24, 2020) (granting compassionate release due to "the confluence of circumstances brought about by the extreme care-giving needs of his family" despite not being the only available caregiver); *United*

---

[5] Scheduled Telephone Encounter in Special Needs Program, KAISER PERMANENTE (Aug. 23, 2023).
[6] *Id.*

BRIEF IN SUPPORT OF EXPEDITED MOTION FOR COMPASSIONATE RELEASE - 12

*States v. Patrick*, No. 3:12cr141 (JBA), 2022 U.S. Dist. LEXIS 126469 (D. Conn. July 18, 2022),

(granting compassionate release to care for an *ex-wife*).

### E.    Courts Have Found Compassionate Release Proper to Care for Ailing Parents

This Court has also granted compassionate release to care for ailing family members. In

U*nited States v. Martinez*, 2020 U.S. Dist. LEXIS 167652 (S.D.N.Y. Sep. 13, 2020), the Court

found that having to care for a sibling fighting cancer warranted compassionate release. "Because

Mr. Martinez is the only family member willing to care for his sister during what unfortunately

seems to be the end of her battle with cancer and the uncertainties caused by the COVID-19

pandemic, the Court finds that Mr. Martinez has demonstrated extraordinary and compelling

circumstances warranting release." *Id.* at *6. In another case, this Court granted compassionate

release where a defendant "has demonstrated that his mother requires constant care and that he has

become her only available caregiver," *United States v. Hasanoff*, No. 10-CR-162 (KMW), 2020

U.S. Dist. LEXIS 199816, *6 (S.D.N.Y. Oct. 27, 2020).

### F.    Courts Have Found Compassionate Release Proper to Care for Minor Children

In further support of compassionate release, Mr. Saeedi has been the only available

caregiver for his minor children, who live at home with his ailing wife and parents. He has been

tending to the children in addition to his wife and parents since they cannot assist in any way with

their care. They are in school and require transportation to school events, among other everyday

parental tasks with children. Mr. Saeedi is the *only* person who can care for his children. This

Court has granted compassionate release in situations where the defendant has been the best

available caregiver for their minor children. In *United States v. Francisco-Ovalle*, No. 18-cr-526

(AJN), 2022 U.S. Dist. LEXIS 67588 (S.D.N.Y. Apr. 12, 2022), this Court granted compassionate

release after a first motion had failed where the defendant's wife had died and left the children in the care of other family members. The Court said that this "patchwork arrangement" of caring for the children "established an extraordinary and compelling reason for release because he is the sole available family member to care reliably for his two minor children." *Id.* at *6 (collecting cases).

## IV.  SECTION 3553 FACTORS: A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF SENTENCING

A review of the § 3553(a) factors, to the extent they apply, weighs in favor of an immediate reduction in sentence. Compassionate release would not undermine the goals of Saeedi's original sentence.

### A.  Nature and Circumstances of the Offense

The nature and circumstances of the offense underlying Mr. Saeedi's conviction are admittedly serious. However, he has never minimized his conduct and has admitted to and provided details of the offense to the court, assisting the government in every way possible. This assistance was promptly offered, in addition to promptly accepting responsibility for his criminal offense conduct.

Notwithstanding, no offense automatically bars someone from compassionate release. The courts have recognized that people change. Numerous courts across the country have granted compassionate release to those who have committed sexual offenses against children and even those supporting terrorism. *See, e.g., United States v. Patrick,* No. 3:12cr141 (JBA), 2022 U.S. Dist. LEXIS 126469, *3-4 (D. Conn. July 18, 2022) (granting compassionate release to enticement of a minor offense); *United States v. Hasanoff*, No. 10-CR-162 (KMW), 2020 U.S. Dist. LEXIS 199816 (S.D.N.Y. Oct. 27, 2020) (terrorism-related offense).

### B.      History and Characteristics of the Defendant

The § 3553(a) factors consider the person today rather than the person who stood before the court during the original sentencing. This is because Congress, in drafting § 3553(a), acknowledged that people can and do change. *Pepper v. United States*, 562 U.S. 476 (2011). This is the case with Mr. Saeedi, who has dedicated himself to his family and become the sole support for his wife, kids, and parents, all of whom rely on him. While this was briefly mentioned in the Sentencing Memorandum filed by counsel, it failed to provide the urgency of why Mr. Saeedi's absence from home, even for a short time, would significantly impact family members who physically rely on him for their wellbeing.

Examples abound showing Mr. Saeedi played a minor role in the offense. There is no dispute that his offense conduct did not even come close to his codefendants. In its Sentencing Memorandum, the government said the following about Mr. Saeedi's minor role: "In particular, Saeedi is the least culpable of the three co-defendants. In contrast to [his codefendants], Saeedi made less money, did not tip others, did not falsify documents, and attempted to cooperate." (ECF No. 124 at 6).

### C.      The Need for the Sentence Imposed

   1. *Reflecting the Seriousness of the Offense, Promote Respect for Law, and Provide Just Punishment for the Offense*

The Court made its position clear when it imposed a sentence on Mr. Saeedi for his offense. It clearly reflected the seriousness of the offense to Mr. Saeedi, his family, and the public. This is true considering that the Court's sentence was below the Guideline range for the offense but was consistent with the government's request for a "substantially" lower sentence than the Guidelines called for. (*Id.*).

### 2. Afford Adequate Deterrence to Criminal Conduct

A study by the National Institute of Justice ("NIJ") found that longer sentences have no deterrent effect: "Prison is an important option for incapacitating and punishing those who commit crimes, but the data show long prison sentences do little to deter people from committing future crimes." Critically, the study's authors said, "there is evidence suggesting that short sentences may be a deterrent," noting that "prisons may exacerbate recidivism."[7]

### 3. Protect the Public from Further Crimes of the Defendant

The U.S. Sentencing Commission's study on recidivism among 25,000 federal offenders over eight years shows that Mr. Saeedi's age and offense put him in the lowest category for reoffending (see graphic below).





---

[7] *Five Things About Deterrence*, NATIONAL INSTITUTE OF JUSTICE (Jun. 5, 2016), https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

But these numbers are for the *average* offender. Mr. Saeedi is not an "average" offender but has been deemed a minor participant in the offense, and he has strong family support – and compelling reasons to remain out of prison so that he may take care of his family. This means Mr. Saeedi's recidivism rate is well below the already-low national average for federal offenders. Moreover, any community risk is mitigated by his supervised release conditions. This Court has the authority to modify Mr. Saeedi's supervised release conditions to ensure these ends are met. *United States v. Hogenkamp*, 979 F.3d 1167, 1168 (7th Cir. 2020).

> 4. *Provide Defendant with Needed Educational, Vocational Training, Medical Care, or Other Correctional Treatment*

This provision does not apply to Mr. Saeedi; he does not need vocational training, medical care, or other treatment that the BOP could provide in the five-month sentence imposed. Mr. Saeedi is financially stable and requires no medical care that he cannot obtain from his own physicians. Prison would serve no role in these contexts in Mr. Saeedi's case.

### D.    The Kinds of Sentences Available and the Established Sentencing Ranges

As noted above, the government argued for a substantially reduced sentence, citing Mr. Saeedi's minor role in the offense, and a reduced sentence was imposed. The minimal sentence imposed would not be undermined by converting it to probation or supervised release with special conditions so that Mr. Saeedi could remain at home and care for his ailing parents, ailing wife, and minor children.

### E.    Any Pertinent Policy Statements

The USSC has updated its policy statement regarding compassionate release motions to conform with the First Step Act's changes to the statute authorizing relief. The revised policy statement now provides that an extraordinary and compelling reason for compassionate release

includes "[t]he death or incapacitation of the caregiver of the defendant's minor child"; "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse"; and "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(A)-(C). This is precisely the overarching grounds for relief that Mr. Saeedi seeks in this motion.

### F.       *Granting Compassionate Release Will Not Result in Unwarranted Disparity*

Granting compassionate release will not result in an unwarranted disparity in sentences imposed for similar offenses. According to a 2023 Report by the Sentencing Commission, fraud offenders were sentenced to probation-only sentences in 74.7 percent of the cases in federal court.[8]

### G.       *The Need to Provide Restitution to Any Victims of the Offense*

Mr. Saeedi and his codefendants were ordered to pay restitution jointly and severally. A sentence of imprisonment would not enable the payment of restitution, and granting compassionate release would impact no money owed to any persons or the government.

## <u>CONCLUSION</u>

For the foregoing reasons and any others that the Court deems appropriate and just, Abbas Saeedi respectfully submits that the Court should reduce his sentence and allow him to remain at home so he may care for his severely debilitating and ailing parents and wife and his minor children, all of whom rely on him every day.

Respectfully submitted,

/s/Brandon Sample

---

[8] *Quick Facts: Organizational Offenders*, U.S. SENTENCING COMMISSION, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Organizational-Offenders_FY22.pdf (last visited Apr. 1, 2024).

BRIEF IN SUPPORT OF EXPEDITED MOTION FOR COMPASSIONATE RELEASE - 18